May it please the court. My name is Robert Isaacson and I represent the appellants Angela Hawkins and Kelly Swinton on this qualified immunity appeal. Officer Hawkins appeals the denial of qualified immunity with regards to her, with regard to the excessive force claim asserted against her, with regard to the unreasonable search claim, and with regard to the conspiracy claim asserted against her. Officer Swinton is here to appeal the denial of qualified immunity with regard to the conspiracy claim that was asserted against her. I would like to take up the conspiracy claim first because it's the least fact intensive and I believe it has, there's a lot of clarity to where this court should go. But it's our position that the court should have granted qualified immunity with regard to conspiracy because of a valid conspiracy claim under section 1983 was not pled. In order to plead a conspiracy claim under section 1983 there has to be pled a loss of a right protected by federal statute or the constitution. In fact what the pleading says that appellants made out false and incomplete official reports and gave false and incomplete version of events to other persons to cover up their own misconduct and the misconduct of Hawkins. No mention of any loss of life, liberty, or property. We have cited a lot of 8th Circuit cases and cases from other jurisdictions that indicate there's no constitutional right to an accurate police report. And in the absence of asserting any loss of life, liberty, or property, that you have not asserted a valid conspiracy claim. Neither the district court nor plaintiff has really challenged those holdings. We have also asserted that there's no constitutional right to any sort of IED investigation and the district court or Robinson haven't really challenged those and I'm not really sure at this point that there's an IED angle on this. In fact it's important to note that Robinson doesn't dispute that that language doesn't state a claim but rather abandons the claim and if you look on page 34 of her brief, the language states Robinson is not complaining that Hawkins and Swinton violated her rights with regard to an accurate police report or thorough IED investigation. So they're essentially backing away from the only pled claim they have with regard to the conspiracy claim. So the question becomes why are we still here? Well the district court looked at this and decided to read this as an access to courts claim. Now the district court did not do this based on the language of the pleading. In fact the district court said they didn't directly allege this and in fact the district court had to come to that conclusion because in order to plead an access to courts claim you have to plead an intentional, an intent to prevent access to courts and you have to plead an actual injury meaning you've been precluded from maintaining or preserving a claim or getting to court on a claim. That's clearly not in this pleading. Rather what the district court did was it said based on the arguments submitted in their summary judgment response I'm going to say it's an access to courts claim. And we find that result to be untenable. Rule 15 talks about how you amend a pleading and you get leave and then you file a pleading and you plead the case. That didn't happen here. So we've on that ground simply an actual conspiracy claim was not pled. Even if it was there's no evidence to support it. All the evidence in the case in fact centers around the preparation of the police reports and that is supported in page 30 I believe of plaintiff's brief where it states as follows. In dealing with the conspiracy claim Robinson's brief says a reasonable juror could find that Swinton and Hawkins reached a meeting of the minds to omit pertinent facts from the police report relating to the search of Ms. Robinson and to exclude Ms. Robinson's written statements from the final police report. That's what they got. Okay. A meeting of the minds regarding the police report that doesn't establish an access to courts claim. What's your take on Linderman? Linderman had a whole lot more going on than just the police reports. There was the IED commander who was alleged to have been providing information to the defendant officers in order to cover up this claim. There was actions taken outside of the police reports by several officers to cover up this claim. And so in fact the argument and apparently was not made regarding you have no constitutional access to police or right to an accurate police report because it's not even discussed in that case. And for that reason I don't think S.L. Linderman applies, Your Honor. Furthermore, with regard to the evidence, they are in court. Any inference that they've been kept out of court is belied by the fact of this lawsuit, belied by the fact. The argument for conspiracy is not that it succeeded, but that it was attempted. You can have a conspiracy that's successful. Yes, but they have to show damages. And what they don't have is they have to show that they were kept out of court or that they've limited their ability pursuing court. And the fact of this litigation and the fact that not only do they have police reports and they have testimony from the officers talking about all the mistakes in the reports clearly shows that any argument that they've been hindered by this is speculative. And in fact, it's not a case if it ever got to trial, which we obviously don't believe it should. We have also asserted even if they had pled it and even if there was evidence to support it, the intercorporate conspiracy doctrine bars it. We have basically an organization can't conspire against itself. Given my time parameters, does anyone have any questions about that before I move to excessive force? You just said it can't conspire against itself. Then I misspoke. With itself against somebody else. An agency and its employees cannot conspire with themselves against somebody else. There you go. Now, was that an issue in this Linderman case? Because I know we've applied that in 1985 cases and other circuits have applied it in 1983 cases. So I wondered why didn't that knock out the claim in Linderman? Was it just not raised? I don't recall that being discussed. I agree with the court. The circuit has not gotten to the issue of whether intercorporate conspiracy doctrine goes to a 1983 case for the reasons in the briefing, namely that the statute, the difference in statutory languages don't compel a difference and that the basis for that doctrine, meaning that an agency and its employees are one under the law, doesn't compel a different finding and then we think the doctrine applies also. Were there any more questions with regard to the conspiracy before I move to excessive force? With regard to excessive force, it's our position or the A circuit has held that, in fact, a de minimis use of force does not create a constitutional claim. That is in Crumley, which is what we cited. It's also supported by the holdings in Crumley and supported by the holding of the Foster case. In terms of the facts here, the force that was applied was that Officer Hawkins allegedly grabbed her while still holding on to her, pushed her one her face did not, pulled her back, turned her around and then pushed her back into the wall. The initial push knocked the wind out of her. She characterized it, I believe, as pain. The initial pain is 8 out of 10 and then the second push was 7 out of 10. She said she had injuries to her back and shoulder, a pain to her back and shoulder. She went and received medical attention that day. The medical records reflect that, in fact, basically her complaints of injuries, there was no objective finding of injury. The injury, the pain all resolved within a week. It's our position, given that de minimis use of force, as explained by the de minimis injuries, that you simply cannot square an officer who was responsible for bright lines and for laws, responsibilities that have to be apparent. You just can't distinguish this from the de minimis force used in Foster. Foster was an incident that happened at an airport. It started at a part where the individual had his car parked and then it went when they were conveying him to another site and they, according to the plaintiff, they pushed him against the wall twice and roughed him up, I believe is the exact language. And that's the same amount of force that was applied here and really, I don't see how it could be clearly established that the de minimis use of force, meaning just pushing somebody, is a bright line that this officer's crossed and for that reason. What's the evidence on handcuffing? There's some argument about the tightening of the handcuffs. What's the evidence on that? That she was handcuffed. I don't recall any medical evidence. And I don't, as I sit here, I'm sorry, I don't recall a testimony about pain. What's the claim, as you understand it, that she was handcuffed initially and then there was a tightening at a later time? Is that the argument? I believe so. To be honest with you, the handcuffing has generally never been the gravamen of this thing. It's the pushing and shoving. It is in the briefs, I just want to make sure I understood. Is this a handcuffing situation where the internal ratchets on the handcuffs just kept getting tighter and tighter because of the movement and struggle? There's nothing in the record to support that. Because that's usually, when you see the case, it's rarer that somebody goes and cranks the handcuffs tighter. It's that every time you pull on them, they have a reverse ratchet and so they tighten. And as the foster case indicates, it's basically a higher standard with handcuffs because they always apply some sort of pain and inconvenience to somebody. I don't believe the record supports that here. Does the verbal statements of the officer have any relevance to consideration of the constitutionality of the strip search? I thought you were going to excessive force. Could you repeat the question for me, Your Honor, please? The verbal statements alleged to have made by the officer, what's their impact on consideration of the validity of the strip search? I believe there's something to be looked at there. I believe the district court cited a case called Evans v. Stevens. I believe that's the name. And in that case, two young men were arrested on the highway, were conveyed from the patrol car and then taken to jail and were searched very thoroughly and arguably abusively. And they were subject to taunting and racial taunting and all that for the entire duration. Here, what we have is three epithets. There is B, we're going to do this right now. Then there's you're an effing drug fiend. And then later there's B, that's not all you have on you. That's what we have. The standard for the search is it has to be hygienic. It has to be done by somebody the same sex. It has to be done out of public view. And it can't be abusive and degrading. We think Officer Hawkins is a female. So we're fine there. It was out of public view. Everyone agrees. The only one in view was one officer who was 20 feet away by plaintiff's third hygienic. She used gloves. We were in the clear air. Yes, it was in a trailer lot, but none of her body parts were touching anything that was dirty or anything. Was there evidence of some debris or some of the oily substance on the trailer on her clothing? But not while the search was being conducted. She wasn't impacting. That was from being shoved against the thing prior to this happen again, allegedly. And then lastly, abusive. And this court sort of got to it. If three epithets and what we've already shown is de minimis shoving, you know, make this a constitutional violation. I don't know that I agree with that, but it certainly doesn't cross the bright line we need given the Richmond case and the sort of search that happened there. I would like to preserve the rest of my time. Who was 20 feet away and what was the perspective that that person had on the search? Plaintiff's testimony was essentially that it was the officer who pulled up. Officer Hawkins asked for gloves. This officer pulls up, gives her a set of gloves, pulls away. He has one foot in the car, one foot out. And according to plaintiff's testimony, she's not looking at him, but she says from 20 feet away is the state of the record based on plaintiff's testimony. And what's your position on whether that, why do you say that doesn't make this unreasonable? He's 20 feet away and the court's cases talk about not within public view and it also talks about security concerns. They're allowed, I think it's reasonable to have one officer, so she's not one-on-one. Yeah, so in case there's an altercation, you mean? Anything could happen, Your Honor. If no further questions, I will sit down. Thank you. Thank you, Mr. Isaacson. Mr. Caldwell. Thank you. May it please the court. My name is Ben Coudray and I'm here on behalf of Kayla Robinson. This case is about egregious violations of Ms. Robinson's basic constitutional rights and human dignity and then the subsequent cover-up by certain officers of the St. Louis Metropolitan Police Department. However, for the purposes of this appeal, the analysis is related solely to qualified immunity and as such, the record must be viewed in the light most favorable to Ms. Robinson and all the reasonable inferences from the record should be afforded to her. It's well settled that officers are not entitled to qualified immunity if they've violated a federal statutory or constitutional right and if the unlawfulness of their conduct was clearly established. In short, the focus for the court is about whether the officer had fair notice that their conduct was unlawful. In this case, each of Ms. Robinson's alleged constitutional violations involved clearly established rights and as I'll discuss a little more later on, were clearly violated. Specifically, as pointed out by Mr. Isaacson, Ms. Robinson has alleged that her, that three constitutional violations have taken place, that Officer Hawkins and Officer Swinton conspired to deprive her of her right to seek justice for the violations of her constitutional rights, that Officer Hawkins used excessive force during her search and or detention of Ms. Robinson and again, giving Ms. Robinson's version of events all the benefit of the doubt, Officer Hawkins conducted a blatantly unlawful and unreasonable search of Ms. Robinson. In fact, even if you were to give any credence whatsoever to Officer Hawkins' version of events, I think that you would find that the search was unlawful. Turning to Ms. Robinson's 1983 conspiracy claim, I want to jump right into the Lenderman case. First, I recently had the opportunity to view or to review the complaint or the first amended complaint in the Lenderman case and it reads, I'm not going to sit here and that they were specifically denied their access to right, their right to access the courts. They pled that the conspiracy caused their constitutional rights to be violated and I think that it was left out by the appellants in their argument that in Ms. Robinson's complaint, she does plead that her constitutional rights were violated under the conspiracy count. She does plead that and to that end, to further expand upon Lenderman, a case that was opined by this court in 2013, it's very similar and almost directly on point. In that case, the plaintiff alleged that several police officers conspired to cover up her wrongful arrest by submitting a false incident report and interfering with the internal affairs investigation at the St. Louis Metropolitan Police Department. The final incident report there didn't identify an assisting officer, contained numerous false statements and inaccuracies. It made no mention that one of the alleged co-conspirators was even on the scene. During the IAD investigation, it was determined that the officer not mentioned in the report made several untrue statements. Testimony also revealed that one of the co-conspirators considered another co-conspirator to be a mentor. The district court in that case denied qualified immunity and this court upheld the ruling, stating that the plaintiff had a constitutional right to bring a section 1983 action for false arrest and detention and that the record supported a conclusion that the co-conspirators conspired with each other to deprive the plaintiff of a valid section 1983 claim. The plaintiff in that case as to the damages aspect also testified that the incident caused her to be deathly afraid of police officers and when she encounters one, she gets upset and cries. As it relates to that, the court found, this court found that such evidence could support a finding that the plaintiff was injured as a result of the overt act of filing a false police report, which leads me to my next point. The mention of the the police report and the inaccuracies and the omissions is not here that we are claiming she has a constitutional right to the same. Those are overt acts that the defendants took in furtherance of the conspiracy, which is one of the essential elements to the claim. So it's not that Ms. Robinson has at any point pled or claim that she has a constitutional right to an accurate police report. That's merely evidence. What constitutional right is she alleging then? Well, at this point, your honor, to be quite frank, we've alleged that her constitutional right was violated. What constitutional right? If I'm being honest, we didn't specify a constitutional right in the complaint. Well, we've got to know what right you're alleging, I think, in order to decide whether this claim can proceed. Do you have one in mind now? Well, I think that it's the right to bring a valid 1983 claim, as was the case in Linderman. And like I said, the complaint there was very similar. Now, I don't know. Didn't she bring a valid? I mean, how has she been harmed here? How have her rights actually been infringed? Because she brought the claims that we're talking about in these other two counts. Sure. So it's similar, again, to Linderman. First, as it relates specifically to her and her harm. You mean Linderman, the alleged conspiracy didn't interfere with the ability to bring any lawsuits? The court addressed that in Linderman, actually. And it's stated that because the plaintiff could bring constitutional claims against other officers, she would not be provided adequate redress for her grievances. Meaning that, so for instance, in this case, Miss Robinson doesn't have another claim against Officer Hawkins. This is essentially the only way for her to hold Officer Swinton. This is the only way for her to hold Officer Swinton responsible for her actions in furtherance of the conspiracy. She still does have claims against Officer Hawkins for unreasonable search and excessive force, but she has no other means of seeking redress for Officer Swinton's actions. And that's what the court in Linderman said as well. What I was trying to understand is how did Swinton cause her any harm? By filing a police report that contained numerous inaccuracies. It makes no mention that Officer Hawkins performed a pat-down search of Miss Robinson. It makes no mention that Officer Hawkins even took Miss Robinson to the nearby parking lot. It makes no mention that Officer Hawkins performed a strip search of- I understand. You're just saying the fact that that's all known now doesn't make a difference that's still harm, even though we all know that's what happened? Correct. And I think that's what the court in Linderman addressed. What about the intracorporate conspiracy doctrine? That didn't seem to have been discussed in Linderman. It didn't, Your Honor. And the court has applied that in Section 1985 cases, as I understand it. Correct. Why wouldn't it apply in a Section 1983 case, since it's been raised in this case as a defense and maybe wasn't raised in Linderman? I don't think it should be applied from a practical and public policy standpoint, because if this court were to hold that the intracorporate conspiracy doctrine applied, it's essentially saying that all police officers have to do to avoid accountability for their conspiracies would to make sure that they are only conspiring with police officers in their own department. And as long as they're doing that, it's okay. And the results that that could lead to are troubling at the very least. Well, that would seem to apply in a Section 1985 case, too, wouldn't it? That rationale you just gave? It does, but courts have discussed that it's typically applied, at least in the cases cited by appellants in an employment context. And from what I've gathered, the issue there is that the plaintiff still has redress against the company for the underlying claim, and they consider that to be like a single act. And here it's different because Officer Swinton's actions are not the same single act as Officer Hawkins for her unreasonable search and her excessive force. Officer Swinton was not a part of that. She wasn't even on the scene at the time, which is also why it makes her preparation of the police report even more troubling. Turning to the defendant's second argument that Officer Hawkins is entitled to qualified immunity from Ms. Robinson's excessive force claim, it's preliminarily extremely important to note that the two cases cited to by Officer Hawkins in support of their argument predate this court's 2011 opinion in Chambers, which clarified a previously open question in this circuit as to whether an excessive force claim requires some minimum level of injury. In the Chambers case, it was made clear by this court that a plaintiff need not show more than de minimis injury to establish an application of excessive force by an officer. Chambers further stated that the degree... Do you think Crumley and Foster were based entirely on lack of injury, or lack of more than de minimis injury, or were they also about the degree of force? It talked about the degree of force, but I think what distinguishes primarily those two cases from this case, as it relates to the injury, the plaintiffs in both of those cases testified and admitted that they were not injured. That's not the case here. Ms. Robinson testified that she was caused pain at a level of 8 out of 10 as a result of the first push from Officer Hawkins, and after she was flipped around and pushed backward while she was still handcuffed, that she experienced pain to her hands at a 10 out of 10, and to her back, I believe, or shoulders at a 7 out of 10. That could be considered de minimis injury. I'm not here to say whether it is or it isn't, but it's more than what was admitted in Foster and Crumley, because those plaintiffs admitted that they weren't injured at all. The other distinguishing factors in those cases are that both of the plaintiffs resisted arrest, especially in Foster. He refused the officer's directives on multiple occasions and had to be dragged out of his car. The same goes for Crumley. She resisted arrest and also claimed that she was not injured. In this case, when we look at the objective reasonableness, depending upon the facts and circumstances presented to Officer Hawkins, we have to look at the severity of the crime, whether the suspect poses an immediate threat to the safety of and whether the suspect is actively resisting or attempting to evade arrest by flight. Viewing the evidence in the light most favorable to Ms. Robinson, she possessed only a small amount of marijuana, not enough to be charged as a felony, which she voluntarily turned over to Officer Hawkins. She was unarmed. She did not resist arrest. She complied with every single one of Officer Hawkins' directives. Despite her compliance, she was pushed, as mentioned, twice into the yard, yelled vulgarities in her face, and... Well, the vulgarities aren't related to the force, are they? Not necessarily in the court's analysis of the force, no, Your Honor. All right. Well, I don't know why you brought them up then. The only question is whether pushing her against the truck twice was excessive force. Is that right? Yes, Your Honor. Is there more force? Okay. So that's the force issue. Whether it's clearly established that an officer cannot push a person against the truck in the manner alleged here. Correct. And I think Chambers makes it clear that it was clearly established, especially based upon the fact that Ms. Robinson was not resisting, complied with every single one of the directives that Officer Hawkins gave her, and that the crime at issue was not severe. She posed no threat of harm to Officer Hawkins, any other officers, or anyone else at all. Officer Hawkins admitted that she had no reason to believe that... I think Chambers was about a guy who was on the ground who was kicked gratuitously several times on both sides of his body, even though he was on the ground and handcuffed. I don't see how that would clearly establish that pushing someone against a truck is unconstitutional. Right, end result and not the objective reasonableness of the officer's actions, we're looking at the wrong, or we're focusing on the wrong question. The question is about whether... That's true, that's the general proposition, but I thought you were citing it as clearly establishing whether pushing someone against a truck is excessive. You don't have, you have a case that's factually analogous to that? Not directly on point with that, Your Honor, no. What about the search? Do you want to speak to that? Yes, Your Honor, briefly I will address that. It's obviously long been determined that the Fourth Amendment prohibits unreasonable searches. The factors that courts need to take into consideration are the justification for initiating the search, the scope of the particular intrusion, the place in which it's conducted, and the manner in which it's conducted. Again, viewing the evidence in the light most favorable to Miss Robinson, Officer Hawkins dragged Miss Robinson, whose hands were cuffed behind her back and her feet were bare, into a nearby parking lot behind a tractor trailer, yelled curse words and insults in her face, twice threw her into the tractor trailer, pulled her pants and underwear down, placed her entire hand inside Miss Robinson's underwear and in between her legs, felt around inside of Miss Robinson's underwear, and touched Miss Robinson's vagina, anus, and inside her vagina lips, all in front of a male officer who was watching in a parking lot filled with tractor trailers. For all the foregoing reasons, Your Honors, and for the reasons stated in our brief, I politely, Kayla Robinson respectfully request that this court uphold the district court's denial of qualified immunity and the denial of summary judgment as to Miss Robinson's Thank you, Mr. Coup. Mr. Isaacson, your rebuttal. We'll give you a minute. Very quickly, A, Chambers is a complete red herring. We have never asserted that the claim fails because there wasn't a sufficient level of injury. It's all about the use of force. Chambers says you can look at the injury to evaluate the use of force, but it's about the officer can't be held to distinguish Foster and Crumley. Second, the assertion that the people, the plaintiffs in Foster and Crumley were resisting arrest is really not accurate. The court makes clear in Foster when the shoving against the wall occurred that they were assuming that no resistance was going on. There were two sequences, and this was during the second sequence when no resistance was going on. Third, with regard to SL, there's, again, a whole lot going on there. There was information going from IAD to one of the defendants who conveyed it to a son, which resulted in an attack. And we have cited numerous cases that simply an inaccurate report doesn't support a claim, and this court should follow those and certainly not hold an officer to be able to distinguish if there's anything to be done between SL Lenderman and the legion of cases we've cited in that regard. And if there are no further questions, I'll sit adjourned. Thank you. Thank you, Mr. Isaacson. Thanks to all counsel for your argument to the court. The briefing that you've submitted, we will take the case under advisement.